NATHANIEL POTRATZ, ESQ., SBN 215734
LAW OFFICES OF NATHANIEL POTRATZ
4790 Dewey Drive, Suite A
Fair Oaks, California 95628
Telephone:   (916) 962-2780
Facsimile:    (916) 962-2705

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO)**

| | |
|---|---|
| Kathi Sherwood,<br><br>           Plaintiff,<br><br>     v.<br><br>Blue Cross; Wayne Dahlgren, in his official and/or agency capacity, <u>not</u> in his individual capacity; Does 1 through 10, inclusive,<br><br>           Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. **UNLAWFUL AGE DISCRIMINATION (In Violation of Fair Employment and Housing Act, Cal. Gov. Code § 12900 *et seq.*)**<br>2. **UNLAWFUL AGE DISCRIMINATION (In Violation of 29 USCA §§ 621-634, "ADEA")**<br>3. **NEGLIGENCE (Common law and Civil Code section 1714)**<br>4. **NEGLIGENCE PER SE**<br>5. **AGE DISCRIMINATION IN VIOLATION OF FUNDAMENTAL PUBLIC POLICY (TAMENY CLAIM)**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Kathi Sherwood ("Plaintiff"), who sets forth the following allegations:

## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over the defendants because they are residents of and doing business in the State of California and/or there is a question of federal law.

2. Venue is proper in this court because there is a question of federal law and the acts and omissions giving rise to the claims asserted herein occurred within this judicial district.

3. Plaintiff has complied with administrative requirements prior to initiating this lawsuit for claims made under FEHA. Accordingly, a "Right to Sue" letter has been issued by the California Department of Fair Employment and Housing. As to the ADEA, filing with the state agency (DFEH) is deemed filing with the EEOC. Where the state agency has a "work-sharing agreement" with the EEOC (by which each agency designates the other as its agent for purposes of receiving and drafting charges), timely filing with the state agency satisfies the requirement of filing charges with the EEOC. [See e.g. 29 CFR § 1626.10(c); Sanchez v. Pacific Powder Co. (9th Cir. 1998) 147 F.3d 1097, 1099].

## PARTIES

4. At all times herein mentioned, Plaintiff Kathi Sherwood was a resident of the County of Placer, State of California, and was employed by Defendants.

5. At all times herein mentioned, Defendant Wayne Dahlgren was acting as Director/agent for Blue Cross.

6. At all times herein mentioned, Defendant Blue Cross was doing business in the State of California.

7. At all times herein mentioned, Defendant Blue Cross was regularly employing 20 or more persons.

8. The true names and capacities, whether corporate, associate, individual or otherwise of Defendants, Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to California Code of Civil Procedure §474. Each of the Defendants designated herein as a Doe is negligently or otherwise legally responsible in some manner for the events and happenings herein referred to and caused injuries

1  and damages proximately thereby to the Plaintiff, as herein alleged.  Plaintiff will ask leave of
2  Court to amend this Complaint to show their true names and capacities when the same have been
3  ascertained.
4      9.   At all times herein mentioned, Defendants, and each of them, were the agents,
5  representatives, employees, supervisors, successors and/or assigns, each of the other and at all
6  times pertinent hereto were acting within the course and scope of their authority as such agents,
7  representatives, employees, supervisors, successors and/or assigns.  Each of the acts alleged were
8  ratified, authorized, approved, aided and abetted and/or acquiesced in by the other Defendants.

### FACTS COMMON TO ALL CAUSES OF ACTION

10     10.   I, Kathi Sherwood was a 25 year employee for Blue Cross.
11     11.   I, Kathi Sherwood displayed excellent work ethic and performed excellently in her
12  career with Blue Cross, however her career was dead-ended by age discrimination.
13     12.   Wayne Dahlgren was working for Blue Cross as a supervisor during all the events
14  alleged herein.
15     13.   Some time before August in 2005, I spoke with the Blue Cross H.R. manager
16  Marilyn Hines because I needed a career path to go into Account Management, I wanted to
17  advance in my career with Blue Cross.  She explained to me that I need to apply for Sr. Client
18  Service Rep when an opening comes up.  That the position always is promoted into an Account
19  Manager position.  She had me speak with one of the lead people in Sales (Lorie Hauser).  Lorie
20  also advised me to apply for Sr. Client Service Rep because this is a grooming position for
21  Account Manager.
22     14.   In August 2005, I applied for Sr. Client Service Rep and was promoted.  My first
23  few weeks in the unit I was speaking with a young assistant to a sales rep (Ruby).  She told me
24  that the other young assistant (Annie) told her that "the sales team is going to start hiring more
25  young people because they are more on the ball than older people".  I was shocked and offended.
26  Also she told me that Annie makes comments against another sales assistant who is in her sixties,
27  making fun of her, saying "she is such an old fart, I bet she has Alzheimer's", and ageist
28  comments like that.  I thought that was very mean and offensive, especially since I was an older

person myself, and I was deeply concerned at the ageist culture within our Blue Cross unit. I tried hard to put it out of my mind but it kept coming up in different ways, different comments, different treatment.

15. I went to training in Woodland Hills in February. The training was a week. I went with a Sales Rep (Monique 39 yrs old). She kept making remarks about "the older sales assistant needs to be retired because she has Alzheimer's" and "she is so old, I'm sure she has Alzheimer's". I could not believe it. Employees were so open to discriminate in this department.

16. As a Sr. Client Service Rep I support three Account Managers. I spoke with brokers and our clients (large employer groups) and individual customers all day handling eligibility, claims, benefits, Medicare, coordination of coverage, new benefits laws, groups premiums issues and more. Also this position is expected to handle Health Faires. When an Account Manager is not answering her phone or not in the office they would call me. After a short time our clients and brokers would call me directly. 75% of my job was being an Account Manager, which is why this position always moves into an Account Manager position.

17. In March 2006, one of our Sr. Account Managers gave notice. On March 22, 2006 I applied for the opening.

18. The requirements for Account Manager have always been experience in the Operations side of Blue Cross. This means experience in the Customer Service/Claims side of Blue Cross. Also you have to meet company guidelines regarding absenteeism. (If you call in unscheduled 6 or more times within a 12 month period, you are not eligible for promotion.)

19. The director Wayne Dahlgren (new employee-2 months) conducted interviews for two weeks. I was surprised to hear that he allowed an interview with Ruby who was the assistant to a sales rep. She did not meet the basic eligibility and qualifications as far as attendance or operations experience. I went to H.R. and asked why the director would be interviewing Ruby. She said "he is probably just being nice". He had called her in his office a couple times after her interview and she came out acting as if she had the job, telling her friend that she was so excited. This was before my interview.

20. During my interview he asked me only if travel is a problem, I advised no and we

3

COMPLAINT FOR DAMAGES

1  spoke about how much the position pays.  It was really not a full and fair interview.

2      21.    On 4-12-06 he called me into his office.  He said "you are not going to like what I
3  have to say.  You are an exceptional employee, but I have chosen Ruby."  I was so shocked, in
4  total disbelief.  I said why did you do that? She has no experience in resolving technical
5  problems, nor does she understand the claims issues, benefits issues or company policy.  She
6  does not even know how to look up the answers.  What is she going to say because these
7  questions come in all day to the Account Managers.  Whereas I have years of experience.
8  He said Ruby will have plenty of help. I then said why would you hire someone who needs help
9  when I do this all day long and I would not need assistance.  I already do the job 75% of my days.
10 He said well she has worked with brokers before.   He was very nervous and started twitching
11 because he knew it was age discrimination and I was calling him on it.  I responded, I work with
12 brokers all day long, besides my position is always promoted to Account Manager.
13 He said "well I can *see* Ruby doing the enrollment meetings."  (His tone was highly suggestive
14 that because she was a younger woman that's why he could see her conducting the meetings).
15 I said what do you mean "*see* her doing the enrollment meetings?" Have you ever seen her do a
16 presentation or enrollment meeting?
17 He said no.
18 I said I don't understand.
19 He said again I just can *see* Ruby doing the open enrollment meetings  (which is 4% of the job).
20 I said well she is 24 years old and inexperienced.  I have a niece that is 19 yrs old, very pretty,
21 really no work experience, why don't I tell her to come in and you can give her a job.
22 He said I don't like where this conversation is going.
23 I said imagine how I feel.  This is really a slap in the face to me.  I got up to leave.
24 He seemed desperate and said wait, I may have another job for you somewhere down the road.
25 I said give it to Ruby and I walked away.
26     22.    It was 2:30, I was really upset and told my supervisor Marilyn Robitalle that I was
27 feeling ill and went home.  The next day I called in sick.  I wanted the Account Managers to
28 know that Wayne said they all said negative things about me. I sent them an email from home to

1  tell them and that I would not be in.

2      23.     On Friday 4-14-06 I went to the doctor and arrived at work at 11 am. I knew that
3  my management would try something because I made reference to age discrimination. The
4  doctor wrote me a note for being out. Also he filled out a FMLA form.

5      24.     My supervisor was waiting for me with a written warning for allegedly having a
6  bad attitude, calling in sick and creating a negative environment by sending the email advising
7  what the director had told me. I told her that I am not going to sign it because it was lies. She
8  said I can fire you on the spot. I said do what you want, otherwise I am going to my desk and
9  work, and I do not appreciate being threatened or harassed  I went to my desk and worked.

10      25.     In all my 25 years as a hard working and loyal employee of Blue Cross, I have
11  never been written up. Almost every time I am promoted and leave a unit, the particular
12  supervisor always says I am always invited and welcomed back if I want.

13      26.     I remained professional and continued to do my job. My friends would come by
14  my desk and ask if I am ready for the meeting. I did not get the emails regarding the meetings. I
15  strongly believe that I was left out intentionally, I was being singled out as the black sheep. I was
16  left off of several emails regarding staff functions. Even a cake celebration for the team. I was
17  completely ignored and ostracized. It became a hostile and oppressive work atmosphere.

18      27.     Two weeks later I gave notice by written email to the director, V.P., my
19  supervisor and H.R. I said I will stay on 4 weeks more and hopefully train someone else.

20      28.     I filed a complaint with the state department for age discrimination and
21  harassment. The H.R. manager (Marilyn Hines) called me in because she heard from the legal
22  department. We spoke about what had happened and she said, I don't blame you, I would not
23  want to work for him either.

24      29.     After 3 weeks, the H.R. manager came to me and asked me if I would like to leave
25  early and they would pay me through the week. This was 5/30/06. I cleaned out my desk and
26  left. After 25 years, to be treated like that was a huge slap in the face and was very hard on me.

27      30.     Most of my coworkers in the unit said they were very impressed with my
28  professionalism during something that was so unfair, so discriminatory, so wrong.

**Reasons that age discrimination was obvious:**

Wayne dropped the guidelines of past operations experience for Ruby (after she spoke with him one-on-one where she expressed that she did not see why she had to have that experience to apply for account manager). So when he posted the position for Account Manager, he dropped the job experience description that has always been there for many years.

Ruby was with Blue Cross just 1 year.

Wayne never explained to me Ruby's skills or experience or what she was bringing to the position of Account Manager, all he said was that "I could *see* her doing the enrollment meetings."

Wayne dropped the attendance guidelines for Ruby. She was always calling in sick, a lot more than 6 times. It was more like 15 or more.

Ruby did not have the expertise or experience after we sign a group. She was the assistant to the sales rep. She helped with missing information on applications, helped with quotes. She had nowhere near the experience I had, although I had the disadvantage of being more than twice her age (51 years old).

During the weeks of the interview process Ruby had a complaint filed against her by one of the team members for how she treated another employee. It went to H.R. where a hearing was held and she was written up in her personnel file.

During the weeks of the interview process Ruby walked into a staff meeting 15 minutes late twice. Her reason mentioned to the entire group was that she was at Starbucks.

During the weeks of the interview process, after Wayne had interviewed her, she was overheard telling her friend Annie, that she was so excited and could not wait to be AM. (**before I even had my interview**).

(**Before my interview**), Wayne called Ruby back into his office (after her 1st interview) and asked her if her absenteeism was going to be a problem. Again, she came out of that meeting very excited, talking like she had the position already.

I went to my supervisor and asked why Ruby was talking like she had the job already

when I had not even been interviewed yet.

Ruby told me that she received bad marks on her yearly review for attendance.

The person that was Sr. Client Service rep prior to me was 36 yrs old.  She was just moved to Account Manager without any interview process.

Everyone that was a Sr. Client Service rep prior to me always became an account manager, until me.

Ruby was young and inexperienced and had not developed a strong work ethic, she missed work a lot, was late, was a whiner, and acted immature.

I was already doing Account Manager functions 75% of the time.

My position was well known as the grooming position for Account Manager

I received many appreciation emails and letters or cards from our clients

During the weeks of interview process, I received an award for representing the face of Blue Cross

I had a good yearly evaluation with high marks on attendance and work quality

When I asked Wayne why he hired Ruby over me he did not have a good answer other than he could see her doing open enrollment meetings.  He spoke nothing of her work experience, qualifications or skills.  He even admitted that she would need a lot of help.

My resume of many different departments at Blue Cross of 25 years of experience

Blue Cross' policy that the most qualified person is chosen for promotion was violated for Wayne Dahlgren's old school policy that the youngest pretty girl is promoted

### FIRST CAUSE OF ACTION

### UNLAWFUL AGE DISCRIMINATION

**(In Violation of Fair Employment and Housing Act, Cal. Gov. Code § 12900 *et seq.*)**

(By Plaintiff Against All Defendants)

31.     Plaintiff hereby incorporates paragraphs 1 through 30 of the Complaint, as if fully set forth herein.

32. Plaintiff is protected under the Fair Employment and Housing Act from discrimination due to age (over 40)

33. Defendants wrongfully discriminated (and/or retaliated) against Plaintiff because of Plaintiff's age.

34. Plaintiff's age was a substantial factor in Defendants' decision to unlawfully discriminate against Plaintiff.

35. Defendants' conduct as alleged in this complaint constitutes an unlawful employment practice in violation of Cal. Gov. Code §12900 *et seq*.

36. As a direct, foreseeable, and proximate result of Defendants' unlawful acts, Plaintiff has suffered and continue to suffer substantial losses in earnings and job benefits, and has suffered and continues to suffer mental and emotional distress, all to Plaintiff's damage in an amount within the jurisdictional limits of this Court, to be established according to proof at trial.

37. Defendants committed the acts described in this complaint oppressively or with conscious disregard of Plaintiff's rights and welfare, entitling Plaintiff to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## SECOND CAUSE OF ACTION
## UNLAWFUL AGE DISCRIMINATION
### (In Violation of 29 USCA §§ 621-634, "ADEA")
(By Plaintiff Against All Defendants)

38. Plaintiff hereby incorporates paragraphs 1 through 37 of the Complaint, as if fully set forth herein.

39. Plaintiff is protected under the ADEA from discrimination due to age (over 40)

40. Defendants wrongfully discriminated (and/or retaliated) against Plaintiff because of Plaintiff's age.

41. Plaintiff's age was a substantial factor in Defendants' decision to unlawfully

discriminate against Plaintiff.

42. Defendants' conduct as alleged in this complaint constitutes an unlawful employment practice in violation of 29 USCA §§ 621-634.

43. As a direct, foreseeable, and proximate result of Defendants' unlawful acts, Plaintiff has suffered and continue to suffer substantial losses in earnings and job benefits, all to Plaintiff's damage in an amount within the jurisdictional limits of this Court, to be established according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth hereinbelow.

## THIRD CAUSE OF ACTION

## NEGLIGENCE

**(Common law and Civil Code section 1714)**

(By Plaintiff Against All Defendants)

44. The allegations set forth in paragraphs 1 through 43 are incorporated herein by reference.

45. Defendants had a duty to exercise reasonable care and prudence to provide a safe, healthful, non-hostile, non-discriminatory, non-retaliatory working environment, which duty they breached. Defendants also had a duty to exercise reasonable care and prudence to take all reasonable steps to prevent discrimination or retaliation from occurring, which duty they breached.

46. Defendants' breach of duty was the actual and proximate cause of damages suffered by Plaintiff.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE PER SE

(By Plaintiff Against All Defendants)

47. The allegations set forth in paragraphs 1 through 46 are incorporated herein by reference.

48. Defendants' negligence as stated above was negligence per se because in violation

of a statute or statutes designed to protect against the kind of harm which Plaintiff suffered. Specifically, Gov Code section 12900 et seq. and 29 USCA §§ 621-634 was legislated with the intent of preventing and protecting California's workers from age discrimination and retaliation.

49. Defendants' negligence was the proximate cause of harm suffered by Plaintiff.

50. Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth below.

### FIFTH CAUSE OF ACTION

(By Plaintiff for Violation of Fundamental Public Policy against all Defendants)

51. Plaintiff incorporates herein by this reference each and every allegation contained in paragraphs 1 through 50, inclusive, as if fully set forth at this point.

52. Defendants age discriminated against Plaintiff in violation of public policy (Tameny claim). It is a violation of fundamental public policy to age discriminate and/or retaliate against an employee.

53. As a direct and proximate result of such discrimination, Plaintiff has suffered emotional and mental distress and economic damages (losses of income and benefits), all such damage according to proof at trial.

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1. For all general money damages and compensatory damages, past, present and future, plus interest, in an amount within the jurisdictional limits of this court according to proof;
2. For special damages, if any, plus interest, according to proof;
3. For loss of earnings and benefits, past, present and future, plus interest, according to proof;
4. For punitive/exemplary damages, if any, according to proof;
5. For reasonable attorney fees and costs and expert witness fees pursuant to Cal. Gov. Code §12965(b) and 29 USCA §§ 621-634;

6. For incidental and/or consequential damages, if any, according to proof;

7. For prejudgment and postjudgment interest;

8. For reinstatement and backpay and frontpay and all other remedies provided by Cal. Gov. Code §12940 et seq. and 29 USCA §§ 621-634; and

9. For such other and further relief as the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of her peers to the fullest extent permitted by law.

DATED: March 30, 2007              LAW OFFICES OF NATHANIEL POTRATZ


By:   /s/ NATHANIEL POTRATZ
       NATHANIEL POTRATZ, Esq.
       Attorneys for Plaintiff

COMPLAINT FOR DAMAGES