1   SEYFARTH SHAW LLP
    Kenneth D. Sulzer (SBN 120253)

2   2029 Century Park East, Suite 3300
    Los Angeles, CA 90067-3063

3   Telephone: (310) 277-2700
    Facsimile: (310) 201-5219

4

5   SEYFARTH SHAW LLP
    Alfred L. Sanderson, Jr. (SBN 186071)
    Diana R. Craig (SBN 221389)

6   400 Capitol Mall, Suite 2350
    Sacramento, California 95814-4428

7   Telephone: (916) 448-0159
    Facsimile: (916) 558-4839

8

9   Attorneys for Defendants
    BLUE CROSS OF CALIFORNIA, erroneously named as
    BLUE CROSS, and WAYNE DAHLGREN

10

11                   UNITED STATES DISTRICT COURT

12                 EASTERN DISTRICT OF CALIFORNIA

13   KATHI SHERWOOD,         ) Case No. 2:07 CV 00633 LKK DAD
                             )

14         Plaintiff,        ) **DEFENDANTS' NOTICE OF PETITION**
                             ) **AND PETITION TO COMPEL**

15       v.                 ) **ARBITRATION, STAY PROCEEDINGS**
                             ) **AND REQUEST FOR SEVERANCE;**

16   BLUE CROSS; WAYNE DAHLGREN, in his) **MEMORANDUM OF POINTS AND**
    official and/or agency capacity, <u>not</u> in his ) **AUTHORITIES IN SUPPORT THEREOF;**

17   individual capacity; DOES 1 through 10,  ) **DECLARATION OF DIANA R. CRAIG.**
    inclusive,              )

18                    ) Date:     July 30, 2007
        Defendants.      ) Time:     10:00 a.m.

19                    ) Courtroom:   4
                             )

20                    )

21   _____ )

22   TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

23         PLEASE TAKE NOTICE that on July 30, 2007, at 10:00 a.m., in Courtroom 4 of the

24   United States District Court for the Eastern District of California located at 501 I Street,

25   Sacramento, California, defendants BLUE CROSS OF CALIFORNIA, erroneously named as

26   BLUE CROSS, and WAYNE DAHLGREN ("defendants") will and hereby do petition the Court

27   for an order to compel arbitration and to stay the instant action, under the Federal Arbitration

28   ///

1  Act, 9 United States Code section 1 *et seq.* (the "FAA") and California Code of Civil Procedure

2  sections 1281 *et seq.*

3        Defendants' petition is based on this notice, the petition itself, the memorandum of points

4  and authorities, the Declaration of Diana R. Craig, the pleadings and records on file with this

5  court, and such other matters as the court may deem proper.

6  DATED: June 19, 2007          SEYFARTH SHAW LLP

7

8                                  By

9                                       Alfred L. Sanderson, Jr.

10                                      Diana R. Craig
                                        Attorneys for Defendants

11                                      BLUE CROSS OF CALIFORNIA and
                                        WAYNE DAHLGREN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PETITION TO COMPEL ARBITRATION

2      Defendants BLUE CROSS OF CALIFORNIA and WAYNE DAHLGREN

3  ("defendants") hereby petition this Court, pursuant to section 1 of the FAA, and Code of Civil

4  Procedure sections 1281 *et seq.*, for an order compelling arbitration of plaintiff KATHI

5  SHERWOOD's ("plaintiff") complaint and staying the instant action. Defendants allege:

6          1.      During plaintiff's employment with Blue Cross of California, she expressly

7  agreed to be bound by the Company's arbitration policy and to submit any disputes relating to

8  her employment or the termination of her employment to final and binding arbitration.

9          2.      On February 15, 2001, plaintiff signed an application for employment, which

10  provided, in part, that:

11              I understand that as an employee of the Company, I will be subject
                to the Company Arbitration policy. . . I agree to submit any dispute
12              related to that termination to final and binding arbitration, as more
                fully described in the Human Resources Arbitration policy.
13

14  A copy of plaintiff's Application for Employment is attached as Exhibit A to the Declaration of

15  Diana Craig filed herewith.

16          3.      On March 5, 2001, plaintiff signed an offer letter from Blue Cross, which states:

17              As an employee of Blue Cross of California, you will be subject to
                the Company's binding arbitration procedures, as more fully
18              described in Human Resources Policy #613 Arbitration, and the
                enclosed brochure.
19

20  A copy of the offer letter is attached as Exhibit B to the Declaration of Diana Craig filed

21  herewith.

22          4.      The Company's arbitration policy, Human Resources Policy #613, provides in

23  pertinent part:

24              By entering into the employment relationship, the Company and its
                associates subject to the policy consent to the resolution by binding
25              arbitration of all claims arising out of or related to the termination
                of that relationship (and for associates commencing employment in
26              2001 or later, all legal disputes). . . The claims covered by this
                Agreement include, but are not limited to claims for wages or other
27              compensation due; claims for breach of any contract or covenant
                (express or implied); wrongful termination claims; tort claims;
28              claims for discrimination (including but not limited to, race, sex,

sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition).

Human Resources Policy #613 is attached as Exhibit C to the Declaration of Diana Craig filed herewith.

5.     The controversy at issue is controlled by the parties' agreement to arbitrate. Plaintiff's complaint alleges that she was discriminated against based on her age, in that she was denied a promotion on or about April 12, 2006. On or about May 8, 2006, plaintiff resigned her employment and now claims constructive discharge. Defendants deny that age was a factor in the promotion decision, or that plaintiff was treated unfairly. A copy of plaintiff's Complaint is attached as Exhibit D to the Declaration of Diana Craig filed herewith.

6.     On or about May 14, 2007, defendants formally requested that plaintiff proceed with arbitration of this controversy in the manner provided in the agreement. *See* paragraph 6 of the Declaration of Diana Craig filed herewith. On May 30, 2007 plaintiff refused. *Id.* Thus, plaintiff, aware that her claims are subject to arbitration, has unambiguously manifested her intention not to arbitrate by filing this lawsuit and by rejecting defendants' request to proceed with arbitration of this matter.

DATED: June 6, 2007                    SEYFARTH SHAW LLP


By _____
        Alfred L. Sanderson, Jr.
        Diana R. Craig
        Attorneys for Defendants
        BLUE CROSS OF CALIFORNIA and
        WAYNE DAHLGREN

1 **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.     INTRODUCTION**

3 During her employment with Blue Cross of California, plaintiff expressly agreed to be

4 bound by the Company's arbitration policy and to submit any disputes relating to her

5 employment or the termination of her employment to final and binding arbitration.  Nonetheless,

6 on April 18, 2007, plaintiff filed a Complaint alleging age discrimination in violation of the Fair

7 Employment and Housing Act (California Government Code section 12940 *et seq.*) and Age

8 Discrimination In Employment Act (29 U.S.C. 621 *et seq.*), and wrongful termination in

9 violation of public policy.  Plaintiff specifically alleges that she was denied a promotion on or

10 about April 12, 2006, because of her age.  On or about May 8, 2006, plaintiff resigned her

11 employment and now claims constructive discharge.

12 Because the alleged conduct arises out of plaintiff's employment with Blue Cross of

13 California, it is subject to resolution only through binding arbitration.  Defendants, therefore,

14 seek an order from this Court compelling plaintiff to submit her claims to arbitration and staying

15 this action during arbitration.  Defendants also request that the court sever the provision of the

16 agreement allowing for substantive judicial review of an arbitral award.  Due to a Ninth Circuit

17 change in law, this provision is no longer enforceable.

18 **II.    FACTUAL AND PROCEDURAL BACKGROUND**

19 On February 15, 2001, plaintiff submitted an application for employment with Blue Cross

20 of California for the position of customer service representative.  Plaintiff's employment

21 application provided, in part, that:

22 > I understand that as an employee of the Company, I will be subject
23 > to the Company Arbitration policy.  Thus, in the event of my
24 > involuntary termination, I agree to submit any dispute related to
> that termination to final and binding arbitration, as more fully
> described in the Human Resources Arbitration policy.

25 (Craig Dec., Exhibit A.)

26 On or about March 5, 2001, plaintiff signed an offer letter from Blue Cross, which states:

27 > As an employee of Blue Cross of California, you will be subject to
> the Company's binding arbitration procedures, as more fully
28 > described in Human Resources Policy #613 Arbitration, and the
> enclosed brochure.

1    (Craig Dec., Exhibit B.)

2         Human Resources Policy #613, as referred to in and enclosed with plaintiff's offer letter,

3    provides in pertinent part:

4              By entering into the employment relationship, the Company and its
               associates subject to the policy consent to the resolution by binding
5              arbitration of all claims arising out of or related to the termination
               of that relationship (and for associates commencing employment in
6              2001 or later, all legal disputes. . . The claims covered by this
               Agreement include, but are not limited to claims for wages or other
7              compensation due; claims for breach of any contract or covenant
               (express or implied); wrongful termination claims; tort claims;
8              claims for discrimination (including but not limited to, race, sex,
               sexual orientation, religion, national origin, age, marital status,
9              physical or mental disability or handicap, or medical condition)

10   (Craig Dec., Exhibit C.)

11        On or about April 12, 2006, plaintiff was denied a promotion to the position of senior

12   client service associate. (Craig Dec., Exhibit D ( plaintiff's Complaint, ¶ 21).)  On or about May

13   8, 2006, plaintiff resigned her employment and now claims constructive discharge.  On April 18,

14   2007, plaintiff filed a Complaint alleging that she was denied the senior client service associate

15   because of her age and terminated in violation of public policy. (Craig Dec., Exhibit D.)  On or

16   about May 14, 2007, defendants formally requested plaintiff proceed with arbitration.  (Craig

17   Dec., ¶ 6.)  On May 30, 2007, plaintiff refused defendants' request to arbitrate.  *Id.*

18   **III.    LEGAL ARGUMENT**

19        **A.    Standard For Petition To Compel Arbitration**

20        A party to an arbitration agreement may move to compel arbitration when the other party

21   "unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by

22   otherwise unambiguously manifesting an intention not to arbitrate[.]" (*PaineWebber, Inc. v.*

23   *Fargalli*, 61 F.3d 1063, 1066 (3rd Cir. 1995); 9 U.S.C. § 4; Code Civ. Proc. § 1281.2.)  The

24   petition to compel must be supported by an independent basis for jurisdiction.  (*Blue Cross of*

25   *California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045, 1050 (9th Cir.

26   1999).)  Once these requirements are met, the Court shall issue an order directing the matter to

27   arbitration upon being satisfied that a valid agreement to arbitrate exists and the agreement

28   ///

1   covers the dispute in question.  (9 U.S.C. § 4; *United Computer Systems, Inc. v. AT&T Corp.*,

2   298 F.3d 756, 766 (9th Cir. 2002); Code Civ. Proc. § 1281.2.)

3          The above requirements have been satisfied in the present case.  The parties have

4   expressly agreed to arbitrate employment disputes such as the dispute at issue in this case.

5   Plaintiff refused defendants' request to proceed with arbitration, thereby unambiguously

6   manifesting her intention not to arbitrate.  (Craig Dec., ¶ 6.)  Plaintiff filed her complaint in

7   federal court properly asserting federal question jurisdiction with respect to her ADEA claim.

8   Thus, this Court should issue an order directing the matter to arbitration.

9          **B.      The Court Must Compel Arbitration Where There Is A Valid And
               Enforceable Arbitration Agreement Covering Plaintiff's Claims**
10

11         As plaintiff's claims arose from her employment with Blue Cross of California, they are

12   within the scope of the parties' arbitration agreement and, as discussed below, the agreement is

13   valid and enforceable under both state and federal law.

14         **1.      The Arbitration Agreement Is Enforceable Under Federal Law**

15         Under the Federal Arbitration Act ("FAA"), a claim is arbitrable if it is within the scope

16   of the parties' agreement.  (*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130

17   (9th Cir. 2000), *citing* 9 U.S.C. § 4.)  In making this determination, "any doubts concerning the

18   scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand

19   is the construction of the contract language itself, or an allegation of waiver, delay, or a like

20   defense to arbitrability."  (*Id.* at p. 1131.)

21         The parties here specifically agreed to arbitrate all controversies arising from the

22   employment relationship, including those raised in plaintiff's complaint.  The agreement

23   specifically states:

24                   The claims covered by this Agreement include . . .wrongful
                     termination claims; tort claims; claims for discrimination
25                   (including but not limited to, race, sex, sexual orientation, religion,
                     national origin, age, marital status, physical or mental disability or
26                   handicap, or medical condition)

27   (Craig Dec., Exhibit C.)

28   ///

1      The age discrimination and wrongful termination claims raised by plaintiff in her

2 complaint are within the scope of the arbitration agreement and resolution in the arbitral forum

3 therefore is required.

4            **2.**     **The Arbitration Agreement Is Enforceable Under State Law**

5      *Armendariz v. Foundation Health Psychare Svcs.,* 24 Cal.4th 83 (2000), is the standard

6 by which arbitration agreements are measured under California state law. The California

7 Supreme Court in *Armendariz* held that mandatory arbitration of claims related to employment

8 are valid and enforceable provided the arbitration agreement meets the following minimum

9 procedural requirements: (1) provides for neutral arbitrators; (2) provides for more than minimal

10 discovery; (3) requires a written award; (4) provides for all types of relief that would otherwise

11 be available in court; and (5) does not require employees to pay unreasonable costs or any

12 arbitrators' fees as a condition of access to arbitration forum. (*Armendariz, supra,* 24 Cal.4th at

13 p. 102.)

14      The purpose of these requirements is "to ensure minimum standards of fairness in

15 arbitration so that employees subject to mandatory arbitration agreements can vindicate their

16 public rights in an arbitral forum." (*Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1080 (2003).)

17 As discussed below, the parties' agreement satisfies the *Armendariz* requirements.

18            **a.**     **Neutral Arbitrator**

19      The arbitration agreement provides a process whereby the parties select a neutral

20 arbitrator from a JAMS or American Arbitration Association panel through a process of mutual

21 elimination. (Craig Dec., Exhibit C, p. 3.) The agreement further provides that the arbitration

22 will be held in accordance with the rules of either JAMS or the American Arbitration

23 Association.[1] (*Ibid.*) Both JAMS and the American Arbitration Association also require a

24 neutral arbitrator. (AAA Rules 12-13; JAMS Rules 7, 15.) Thus, this requirement is met.

25 ///

26 ///

---

27 [1] / The employment arbitration rules of JAMS or the American Arbitration Association are

28 available at <http://www.adr.org/sp.asp?id=28481> and <http://www.jamsadr.com/rules /employment_arbitration_Rules.asp>.

### b.   Adequate Discovery

The arbitration agreement allows for standard written discovery and the depositions of one individual and any experts. (Craig Dec., Exhibit C, p. 2.) The agreement gives the arbitrator the discretion to order additional discovery requested by the parties. (*Ibid.*) This is commensurate with the employment arbitration rules of the AAA and JAMS. Under Section 9 of the AAA Rules, the arbitrator has "the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute." JAMS Rule 17(b) provides, "[e]ach Party may take at least one deposition of an opposing Party . . .the Arbitrator shall determine . . . whether to grant a request for additional depositions[.]" Thus, the agreement provides for "more than minimal" discovery as required under *Armendariz*.

### c.   A Written Award

The parties' arbitration agreement provides that "[t]he arbitrator shall issue an award and written opinion explaining the factual and legal basis for the award." (Craig Dec., Exhibit C, p. 3.) Thus, the agreement satisfies this requirement. (*See also* AAA Rule 39; JAMS Rule 24.).

### d.   No Limitations on Remedies

The agreement provides that "[t]he Arbitrator has the authority to order any remedies (legal or equitable) that a court of proper jurisdiction could order." (Craig Dec., Exhibit C, p. 3; *see also* AAA Rule 34; JAMS Rule 24.) Thus, the Agreement complies with the *Armendariz* requirement that all types of relief otherwise available in court be afforded to plaintiff.

### e.   No Unreasonable Costs As A Barrier To Access

Pursuant to the parties' arbitration agreement, the Company is responsible for "paying any filing fees and the fees and costs of the arbitrator; provided, however, that if the associate initiates the claim, the associate will contribute an amount not to exceed two hundred and fifty dollars $250.00." (Craig Dec., Exhibit C, p. 3.) This type of filing fee and other similar and usual administrative costs, are common to both court and administrative proceedings, and are therefore not problematic. (*Fittante v. Palm Springs Motors, Inc.*, 105 Cal.App.4th 708, 719

1   (2003).)  Notably, the fee to file a complaint in Federal Court is $350.00.  Thus, plaintiff is not

2   required to bear unreasonable costs to access the arbitral forum.

3       **C.**    **Provision Regarding Substantive Judicial Review is Severable**

4       The arbitration agreement's provision for substantive judicial review, as stated below, is

5   problematic:

6           A party opposing enforcement of an award may bring a separate
        action in any court with proper jurisdiction to set aside the award,

7           where the standard of review will be the same as that applied by an
        appellate court reviewing the decision of a trial court sitting

8           without a jury.

9   (Craig Dec., Exhibit C, p.4, (*Judicial Review*).)

10       The FAA does not allow courts to review awards for substantive errors of law.  (9 U.S.C.

11   §§ 9, 10, 11.)  This is also the case under state law.  (Code Civ. Proc. §§ 1286.2, 1286.6.)  At the

12   time the arbitration agreement in question was executed, parties were able to provide for

13   substantive judicial review by including such a term in their arbitration agreement.  (*See, e.g.,*

14   *Lapine Tech. Corp. v. Kyocera Corp.*, 130 F.3d 884, 889-90 (9th Cir. 1997).)  This is no longer

15   the case.  The Ninth Circuit recently held that "a federal court may only review an arbitral

16   decision on the grounds set forth in the Federal Arbitration Act . . . Private parties have no power

17   to alter or expand those grounds, and any contractual provision purporting to do so is,

18   accordingly, legally unenforceable."  (*Kyocera Corp. v. Prudential-Bache T Servs.*, 341 F.3d

19   987, 1000 (9th Cir 2003), *overruling Lapine Tech. Corp., supra,* 130 F.3d 884.)  The court,

20   however, found that including such a provision was not fatal to the agreement as a whole

21   because it was severable.  (*Id.* at p. 1001-1002.)

22       The issue of severability is governed by state law.  (*Kyocera Corp., supra,* 341 F.3d at p.

23   1001, *citing Wolsey, Ltd. v. Foodmaker Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).)  Both state

24   and federal courts applying state law have consistently held that severing these types of

25   substantive appeal provisions and compelling arbitration is appropriate where an arbitration

26   agreement contains a severance clause.  (*See, e.g., SI V v. FMC Corp.*, 223 F.Supp.2d 1059, 1063

27   (N.D. Cal. 2002); *Oakland-Alameda County Coliseum Authority v. CC Partners*, 101

28   ///

        

1    Cal.App.4th 635, 645 (2002), *distinguishing Crowell v. Downey Community Hospital*

2    *Foundation*, 95 Cal.App.4th 730 (2002); *Little, supra,* 29 Cal.4th 1064 at 1075-76.)

3          The arbitration agreement at issue in the present case contains a severance clause.  It

4    specifically states that "[if] any provision of this Policy is determined to be void or otherwise

5    unenforceable, in whole or in part, such determination shall not affect the validity of the

6    remainder of the Agreement.  All other provisions shall remain in full force and effect."  (Craig

7    Dec., Exhibit C, p.4.)  Thus, the substantive appeal provision is severable, and the remainder of

8    the arbitration agreement is enforceable.

9          **D.     Arbitration Agreements Are Highly Favored Under Federal and State Law**

10          Under both federal and state law, the strong public policy favoring arbitration requires

11   courts to rigorously enforce arbitration agreements and resolve any doubts concerning the scope

12   of arbitrable issues in favor of arbitration.  (*See* 9 U.S.C. § 2; Code Civ. Proc. § 1281.2; *Moses*

13   *H. Cone Mem. Hosp v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Moncharsh v. Haley*, 3

14   Cal.4th 1, 9-10 (1992); *O'Malley v. Wilshire Oil Co.*, 59 Cal.2d 482, 490-91 (1963); *Cione v.*

15   *Foresters Equity Services, Inc.*, 58 Cal.App.4th 625, 642 (1998); *Vianna v. Doctor's*

16   *Management Co.*, 27 Cal.App.4th 1186, 1189 (1994); *Engineers & Architects Ass'n v.*

17   *Community Development Dept.*, 30 Cal.App.4th 644, 652 (1994).)  Given the presumption in

18   favor of arbitration, the party opposing arbitration has the burden of showing that the arbitration

19   provision does not govern the dispute.  (*Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth,*

20   *Inc.*, 473 U.S. 614, 628 (1985).)

21          The FAA manifests a liberal federal policy favoring arbitration agreements, including

22   agreements to arbitrate statutory rights.  (*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20,

23   25 (1991); *see also EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 750 (9th Cir.

24   2003).)  The United States Supreme Court recognizes that "by agreeing to arbitrate a statutory

25   claim, a party does not forego the substantive rights afforded by the statute, it only submits to

26   their resolution in an arbitral, rather than a judicial, forum."  (*Gilmer v. Interstate/Johnson Lane*

27   *Corp., supra,* 500 U.S. at 26, *quoting Mitsubishi Motors, supra* 473 U.S. at 626-628.)

28   Additionally, California law expressly provides that arbitration agreements are a highly favored

1    means of dispute resolution, and are valid, irrevocable, and enforceable, except on grounds that

2    would support revocation of the contract. (*Armendariz, supra,* 24 Cal.4th at 97-98; Code Civ.

3    Proc. § 1281; *Lagatree v. Luce, Forward,* 74 Cal.App.4th 1105, 1117-18 (1999); *24 Hour*

4    *Fitness, Inc. v. Superior Ct.,* 66 Cal.App.4th 1199, 1208-09 (1998); *United Transp. Union v.*

5    *Southern Cal. Rapid Transit Dist.,* 7 Cal.App.4th 804, 808-09 (1992).)

6    **E.    The Court Must Stay Proceedings Pending Arbitration**

7    Pursuant to the FAA, "[t]he court in which such suit is pending, upon being satisfied that

8    the issue involved in such suit or proceeding is referable to arbitration under such an agreement,

9    shall on application of one of the parties stay the trial of the action until such arbitration has been

10   had in accordance with the terms of the agreement." (9 U.S.C. § 3; *see also* Code Civ. Proc. §

11   1281.4.) Accordingly, defendants request an order staying the instant proceedings pending the

12   outcome of the arbitration.

13   **IV.    CONCLUSION**

14   For the reasons stated above, defendants respectfully request the Court: (1) sever the

15   provision of the agreement allowing for substantive judicial review of the arbitral award, (2)

16   compel plaintiff to arbitrate her claims, and (3) stay the instant action pending arbitration.

17   DATED: June (9, 2007                    SEYFARTH SHAW LLP

18

19                                          By _____

20                                             Alfred L. Sanderson, Jr.
                                               Diana R. Craig
21                                          Attorneys for Defendants
                                            BLUE CROSS OF CALIFORNIA and WAYNE
                                            DAHLGREN
22

23

24

25

26

27

28

# DECLARATION OF DIANA R. CRAIG

I, Diana R. Craig, declare:

1.    I am an attorney licensed to practice in the State of California and before this Court and am an associate with the law firm Seyfarth Shaw LLP, attorneys of record for defendants BLUE CROSS OF CALIFORNIA and WAYNE DAHLGREN.  I have personal knowledge of the following and if called as a witness, I would and could testify to the truth of these facts.

2.    A true and correct copy of plaintiff's February 15, 2001, employment application is attached as **Exhibit A**.

3.    A true and correct copy of plaintiff's March 5, 2001, offer letter from Blue Cross is attached as **Exhibit B**.

4.    A true and correct copy of Human Resources Policy #613 is attached as **Exhibit C**.

5.    A true and correct copy of plaintiff's Complaint is attached as **Exhibit D**.

6.    On or about May 14, 2007, I formally requested that plaintiff proceed with arbitration of this controversy in the manner provided in the arbitration agreement.  On May 30, 2007, plaintiff, through her counsel of record, refused to arbitrate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 6th day of June, 2007, in Sacramento, California.

Diana R. Craig

**EXHIBIT A**

# WELLPOINT
## HEALTH NETWORKS

# APPLICATION FOR EMPLOYMENT

AN AFFIRMATIVE ACTION/EQUAL OPPORTUNITY EMPLOYER
WellPoint Health Networks Inc. and its affiliates and subsidiaries, including Blue Cross of California,
UNICARE Life & Health Insurance Company and UNICARE Insurance Company are hereafter referred to as the "Company".

## PERSONAL INFORMATION

| | |
|---|---|
| LAST NAME: Raymes | TODAY'S DATE: 2-15-01 |
| FIRST NAME: Kathi | MIDDLE NAME: L |

SOCIAL SECURITY NUMBER: 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

STREET ADDRESS: 5237 Tucson Cir

| | | |
|---|---|---|
| CITY: Fair Oaks | STATE: CA | ZIP CODE: 95628 |

HOME PHONE: (916) 967-6853   WORK PHONE: ( )   MESSAGE PHONE: ( )

UNDER WHAT OTHER NAMES HAVE YOU WORKED? Kathi Merron

HAVE YOU WORKED FOR THE COMPANY OR ITS DIVISIONS? ☐ YES ☒ NO
IF YES, DATE AND LOCATION _____

WOULD YOU BE WILLING TO RELOCATE? ☐ YES ☒ NO   If yes, where? _____

HAVE YOU EVER BEEN CONVICTED OF A CRIME OTHER THAN A TRAFFICE MISDEMEANOR? ☐ YES ☒ NO
IF YES, PLEASE EXPLAIN _____

HAVE YOU EVER BEEN REFUSED A BOND? ☐ YES ☒ NO
IF YES, PLEASE EXPLAIN _____

## POSITION INFORMATION

POSITION DESIRED: Customer Service

DATE AVAILABLE FOR WORK: 2-20-01   SALARY DESIRED:

TYPE: FULL TIME ☐   PART TIME ☐   CLASS: REGULAR ☐   TEMPORARY ☐

START TIME (circle one)   DAY   EVENING   NIGHT   Hour:

ANSWER ALL QUESTIONS IN THIS SECTION IF POSITION APPLIED FOR REQUIRES DRIVING AN AUTOMOBILE OR A COMPANY CAR

VALID DRIVER'S LICENSE?   IF YES, WHICH STATE DRIVER'S LICENSE NUMBER?
☐ YES ☐ NO

IF YOU ARE OFFERED A POSITION WITH THE COMPANY CAN YOU SUPPLY PROOF OF YOUR RIGHT TO WORK IN THE U.S.? ☐ YES ☐ NO

ARE YOU UNDER AGE 18   ☐ YES ☒ NO

HOW WERE YOU REFERRED TO THIS COMPANY? Friend

DO YOU HAVE ANY RELATIVES EMPLOYED BY THIS COMPANY OR ITS DIVISIONS? ☐ YES ☒ NO
IF YES, NAME AND DEPARTMENT

DO YOU UNDERSTAND THAT OVERTIME MAY BE REQUIRED? ☒ YES ☐ NO
I acknowledge that I may be required to work overtime. Applicant's initials: KL

ARE CRIMINAL CHARGES CURRENTLY PENDING AGAINST YOU FOR OTHER THAN A TRAFFIC MISDEMEANOR? CONVICTION OF A CRIME IS NOT AN AUTOMATIC BAR TO EMPLOYMENT. ALL CIRCUMSTANCES WILL BE CONSIDERED. ☐ YES ☒ NO
IF YES, PLEASE EXPLAIN _____

## EDUCATION

| TYPE SCHOOL | NAME, CITY AND STATE OF SCHOOL | MAJOR | CIRCLE LAST YEAR COMPLETED | DEGREE |
|---|---|---|---|---|
| HIGH SCHOOL | Ponderosa High School | Basic | FR SOPH JR (SR) | DIPLOMA? ☒ YES ☐ NO |
| COLLEGE | Consumnes River | Computer Science + Design | (FR) 1sem SOPH JR SR | DEGREE RECEIVED? ☐ YES ☒ NO |
| GRADUATE, BUSINESS, TRADE OR NIGHT SCHOOL | | | | GRADUATED? ☐ YES ☐ NO |
| OTHER | | | | |

ADDITIONAL SKILLS OR TRAINING WHICH MAY BE APPLICABLE TO EMPLOYMENT AT THIS COMPANY.

| | | |
|---|---|---|
| WHAT PROFESSIONAL CERTIFICATES OR LICENSES DO YOU HOLD? Microsoft word, Project scheduler, Illustrate 9 Certificates | VALID IN WHICH STATE? | DATE EXPIRES |

LANGUAGES YOU READ, SPEAK OR WRITE FLUENTLY?

| | | | | |
|---|---|---|---|---|
| TYPING? ? ☐ YES ☐ NO WPM ___ | SHORTHAND? ☐ YES ☒ NO WPM ___ | WORD PROCESSING? (SOFTWARE) Microsoft ☒ YES ☐ NO (MODEL) | SPREADSHEET? (SOFTWARE) Excel ☒ YES ☐ NO | CRT? ☐ YES ☐ NO |

## MILITARY STATUS

ARE YOU A VIETNAM ERA VETERAN?   ☐ YES ☒ NO

MILITARY TRAINING WHICH WOULD QUALIFY YOU FOR THE POSITION YOU ARE APPLYING FOR

 Blue Cross of California

"An Independent Licensee of the Blue Cross Association ®Registered Mark of the Blue Cross Association ®'Registered Mark of WellPoint Health Networks Inc.

 UNICARE®

EXHIBIT A

D0159

APPLICANT'S NAME   LAST: Raymes   FIRST: Kathi   M.I. L

POSITION DESIRED: Customer Service

SH2080 1/97

## EMPLOYMENT DATA

List all previous employment. Include military service. Account for all periods of time not covered by stating nature of your activity. Use separate sheet of paper if necessary. LIST MOST RECENT EMPLOYMENT FIRST.

| DATES | COMPANY NAME AND ADDRESS | JOB TITLE/DUTIES | BASE SALARY PER MONTH | REASON FOR LEAVING |
|---|---|---|---|---|
| FROM 8-10-81 TO 9-15-00 | Blue Shield of Calif. 181 Blue Ravine Rd. Folsom | Medical Recent - Administrative Review Analyst Specialist appeals | STARTING M/W $ FINAL $18⁵⁵ HR. | Co. Eliminated department |
| SUPERVISOR NAME AND TITLE Paulette Rigsby | | | PHONE (916) 350-7800 | |
| FROM 1979 TO 1981 | World Airways Oakland International Oakland | | STARTING $ FINAL $ | Better job. |
| SUPERVISOR NAME AND TITLE | | | PHONE ( ) | |
| FROM TO | | | STARTING $ FINAL $ | |
| SUPERVISOR NAME AND TITLE | | | PHONE ( ) | |
| FROM TO | | | STARTING $ FINAL $ | |
| SUPERVISOR NAME AND TITLE | | | PHONE ( ) | |

### CERTIFICATION
**APPLICANT: PLEASE READ THE FOLLOWING CAREFULLY BEFORE SIGNING THIS APPLICATION FORM**

1. I declare my answers to the questions on this application are true to the best of my knowledge and belief. It is understood that any false statements appearing on any employment form will be sufficient reason for dismissal from the service of the Company.
2. I understand that my pre-employment qualifications are subject to investigation and I hereby authorize the Company to conduct any necessary inquiries. And, I hereby release any former employer from all liability for any damages resulting from information furnished by them.
3. I also understand that a pre-employment physical examination may be required and is performed by a medical doctor selected by the Company without cost to the applicant. I agree to submit to this procedure with the knowledge that the results of this examination are a determining factor in obtaining employment with the Company.
4. I understand and agree that I will be tested for certain illegal and controlled drugs. I understand and agree that if I fail this test I will not be hired.
5. If employed, I will abide by the existing policies and rules set forth by the Company and such rules and regulations as may become effective while employed by said organization.
6. I understand and agree that the employment relationship is completely consensual and may be terminated by either party at any time for any reason, without cause and without notice. I also recognize that no representative of the Company, other than the Chairman, has the authority to enter into an express or implied contract of employment for a specific duration of time or to restrict in any way the Company's or my right to terminate the employment relationship. And, even that contract must be in writing.
7. If employed, I will submit certain documentation in order to establish my identity and my employment authorization. I understand these documents will be photocopied and placed together with attestation forms that I and the Company have signed, in a file which may be inspected by the U.S. Immigration and Naturalization Service or by the U.S. Department of Labor.
8. I understand that as an employee of the Company, I will be subject to the the Company Arbitration policy. Thus, in the event of my involuntary termination, I agree to submit any dispute related to that termination to final and binding arbitration, as more fully described in the Human Resources Arbitration policy.

The sole recourse for employees with a hire date of May 14, 1996 or later, to challenge an involuntary termination, is through binding arbitration.

**Note:** It is unlawful in Massachusetts, Maryland and some other states to require or administer a lie detector test as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liability.

**I HAVE READ AND UNDERSTAND THE ABOVE**

SIGNATURE OF APPLICANT: _Arthur Adams_    DATE: 2-15-01

### HIRE DATA

| OFFER DATE 02/21/01 | REQ. # SA-01-13 | NT I.D. | POSITION NO. 10401 | COST CENTER 659011220 | LOB | STARTING SALARY 16.37 | START DATE 03/05/01 |
|---|---|---|---|---|---|---|---|
| JOB TITLE Cust. Serv. Rep. | | | | HIRING SUPERVISOR Pam Oliveto | | | EXTENSION 2163 |

D0160

**EXHIBIT B**



**BlueCross**
of California

February 23, 2001

Kathi Sherwood Raymes
5237 Tucson Circle
Fair Oaks, CA 95628

Dear Kathi,

On behalf of WellPoint Health Networks, Inc., I am pleased to confirm the following offer of employment as a Customer Service Representative, for Blue Cross of California. Initially you will be reporting to Pam Oliveto, Supervisor in Public Entities Operations Department. Your effective date of hire is March 5, 2001. Please report to the Human Resources Department at 11050 Olson Drive, Rancho Cordova, at 8:30 am for new hire orientation.

The starting compensation and benefits for this position are as follows:

> An hourly salary of $16.37.
>
> Your benefits become effective the first of the month following 30 days of employment (May 1, 2001).
>
> Eligibility to participate in the 401K plan on the first of the month following 30 days of employment (May 1, 2001). At present, you may contribute from 2% to 15% of your salary. Effective the first quarter following one completed year of service, the Company will begin a 75% match of you contributions up to the first 6% of your salary.
>
> Participation in the Cash Balance Retirement Plan, which is a five-year vesting plan. The Company contribution to this plan is 3% of your earnings.

This offer is contingent upon the following:

> An independent investigation of your personal and professional background.
>
> A urine test for certain illegal and controlled drugs.
>
> Your ability to meet the requirements of the Immigration Reform and Control Act of 1986. The Blue Cross Companies do require proof of your identity and legal right to work in the United States. Be sure to bring the required documents with you on your first day of work. A list of legally acceptable documents is on the back of the I-9 form which is included with the attached packet of forms.
>
> A review of a completed and signed Conflict of Interest Questionnaire.

*An Independent Licensee of the Blue Cross Association*



EXHIBIT ___      **D0156**

Page 2
February 23, 2001
Kathi Sherwood Raymes

We anticipate a productive working relationship. However, this employment relationship is completely consensual and may be terminated by either party at any time without cause and without notice. This understanding is the entire agreement concerning the nature and duration of our employment and can only be altered by a written agreement signed by the Chairman.

Your employment is subject to certain terms, benefits, and policies and procedures applicable to your position. These terms, benefits, and policies and procedures may change or be eliminated from time to time, as deemed necessary by the Company to meet its business needs. Changes may include, but are not limited to work location, work hours, job descriptions and duties, compensation, benefit programs offered, participation in or changes to incentive plan and work rules.

As per our phone discussion, the Service Assistant II is a position that is covered under the bargaining unit agreement with Blue Cross of California and Office & Professional Employees International Union, Local 29. As an employee of Blue Cross of California, you will be subject to the Company's binding arbitration procedures, as more fully described in Human Resources Policy #613, Arbitration, and the enclosed brochure.

Please sign below and return the original of this letter to me. I will be glad to provide you with a copy.

As always, Human Resources is here to assist you in any way we can. If you have any questions with regard to your position or the content of this letter, please feel free to contact me at (916) 636-2121.

Welcome again,

Marilyn Hines
Manager, Human Resources

MH:mjh
Enclosures
cc:  Ann Surette
     Pam Oliveto

I have read and understand the terms of this offer as described in the above letter.

_____                    3-5-01
Signature                                            Date

D0157

**EXHIBIT C**

# Human Resources Policy



**WELLPOINT.**

**Policy Title:** Arbitration-California
**Policy Number:** 613
**Authorization:** Kathy Frazier, VP of Human Resources
**Content Owner:** Kathy Frazier, VP of Human Resources

**Original Date:** 1/1/06
**Current Revised Date:**
**Last Revised Date:**

## Policy Statement:

It is the policy of WellPoint to resolve disputes arising from or relating the termination of an associate's employment (or for associates commencing employment in 2001 or later, all legal disputes) through binding arbitration. Arbitration is the referral to an impartial person for final and binding determination of a legal dispute, and is used in lieu of a jury trial.

## Rationale:

Arbitration provides both the Company and the associate with the benefits of a speedy and impartial resolution procedure while preserving the right to obtain any remedies that are available in court.

## Applies to:

All associates working in California. Non-California associates also may avail themselves of arbitration under this Policy.

## Guidelines:

**Claims Covered by the Agreement**
By entering into the employment relationship, the Company and its associates subject to the policy consent to the resolution by binding arbitration of all claims arising out of or related to the termination of that relationship (and for associates commencing employment in 2001 or later, all legal disputes). This includes claims the Company may have against the associate and claims the associate may have against any of the following: (1) the Company, (2) its officers, directors, associates or agents, (3) the Company's parent, subsidiary and affiliates and agents, and/or (5) all successors and assigns of any of them. By agreeing to be bound by this Policy, the Company and its associates waive the right to a jury trial.

The only claims that are arbitrable are those that, in the absence of this Policy, could have been resolved by a court or governmental agency with judicial authority under applicable state or federal law. The claims covered by this Agreement include, but are not limited to claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); wrongful termination claims; tort claims; claims for discrimination (including but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition); claims for benefits (except claims under an employee benefit or pension plan that either (1) includes an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state, or other governmental law, statue, regulation, or ordinance.

The Company and its associates shall not initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission or similar fair employment practices agency, or an administrative charge within the jurisdiction of the National Labor Relations Board), in any way related to any claim covered by this policy.



EXHIBIT C

**Claims Not Covered by the Agreement**

Claims for workers' compensation or unemployment compensation benefits, and claims that would otherwise be within the jurisdiction of small claims court are not covered by this policy. Also not covered are claims by the Company or associates for temporary restraining orders or preliminary injunctions ("temporary equitable relief") in cases in which such temporary equitable relief would be otherwise authorized by law. Such resort to temporary equitable relief shall be pending arbitration only, and in such cases the trial on the merits of the case will occur in front of, and will be decided by, the Arbitrator.

**Time Limits for Commencing Arbitration and Required Notice of All Claims**

A party with a claim (either an associate or the Company) must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be void and considered waived. The injured party is encouraged to give written notice of any claim as soon as possible after the event(s) in dispute so that arbitration of any differences may take place promptly.

Written notice to the Company, or its officers, directors, associates or agents, shall be sent to the Legal Department at WellPoint, Inc., 1 WellPoint Way, Thousand Oaks, California 91362. Associates will be given written notice at the last address recorded in their personnel file.

The written notice shall identify and describe the nature of all claims asserted, the facts upon which such claims are based and the relief or remedy sought. The notice shall be sent to the other party by certified or registered mail, return receipt requested.

**Representation**

Any party may be represented by an attorney or other representative selected by the party.

**Discovery**

Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party and to subpoena documents from third parties. Requests for additional discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator shall grant an order for such requested additional discovery that the Arbitrator finds the party requires to adequately arbitrate a claim, including access to essential documents and witnesses. In evaluating such requests, the Arbitrator shall take into account the parties' mutual desire to have a fast, cost-effective dispute resolution mechanism.

*Designation of Witnesses*

At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

*Subpoenas*

Each party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties.

**Arbitration Procedures**

The arbitration will be held under the auspices of a dispute resolution organization, either the American Arbitration Associate ("AAA") or JAMS—The Resolution Experts ("JAMS"), with the designation of the organization to be made by the party who did not initiate the claim. Upon mutual agreement of the parties, a dispute resolution organization other than AAA or JAMS may be designated.

Except as provided in this policy, the arbitration shall be in accordance with the dispute resolution organization's then-current employment arbitration rules/procedures. The arbitrator shall be either a retired judge or an attorney who is experienced in employment law and licensed to practice law in the

state in which arbitration is convened (the "Arbitrator"). The arbitration shall take place in or near the city in which the associate was last employed by the Company.

The Arbitrator shall be selected as follows: The dispute resolution organization shall give each party a list of eleven (11) arbitrators drawn from its panel of employment dispute arbitrators. Each party shall have ten (10) calendar days from the post mark date on the list to strike all names on the list it considers unacceptable. If only one common name remains on the lists of all parties, that individual shall be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties shall strike names alternately from the list of common names until only one remains. The party who did not initiate the claim shall strike first. If no common name exists on the lists of all parties, the dispute resolution organization shall furnish an additional list of eleven (11) arbitrators from which the parties shall strike alternately, with the party initiating the claim striking first, until only one name remains. That person shall be designated as the Arbitrator.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator does not have authority to apply any different substantive law or law of remedies. The Arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this policy, including but not limited to any claim that all or any part of this policy is void or voidable. The arbitration shall be final and binding upon the parties, except as provided in this policy.

The Arbitrator is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator considers advisable, and to rule on any pre-hearing disputes. The Arbitrator shall have the authority to rule on a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either party, at its expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings.

The Arbitrator shall conduct a full hearing at which each party shall be entitled to present evidence and examine and cross-examine witnesses. The Arbitrator shall apply the Federal Rules of Evidence. If any party refuses or neglects to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party may file a pre-hearing brief with the Arbitrator. Either party, upon request at the close of hearing, shall be allowed to file a post-hearing brief. The time for filing such briefs shall be set by the Arbitrator.

The Arbitrator shall issue an award and written opinion explaining the factual and legal basis for the award. The decision shall be based on the evidence introduced at the hearing. The award shall be issued not later than thirty (30) days from the date the arbitration hearing concludes or the post hearing briefs (if requested) are received, whichever is later. The Arbitrator has the authority to order any remedies (legal and equitable) that a court of proper jurisdiction could order.

Either party shall have the right, within twenty days of issuance of the Arbitrator's opinion, to file with the Arbitrator a motion to reconsider (accompanied by a supporting brief), and the other party shall have twenty days from the date of the motion to respond. The Arbitrator shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by this Policy) shall then be final and conclusive upon the parties.

*Arbitration Fees and Costs*
The Company will be responsible for paying any filing fee and the fees and costs of the Arbitrator; provided, however, that if the associate initiates the claim, the associate will contribute an amount not to exceed two hundred fifty dollars $250.00. Each party shall pay for its own costs and attorneys' fees, if

any. However, if any party prevails on a claim which permits the court to award the prevailing party attorneys' fees and costs under a statue or written agreement, the Arbitrator may award reasonable attorneys' fees and/or costs to the prevailing party, applying the same standards a court would apply under the law applicable to the claim(s).

*Judicial Review*
Either party may bring an action in any court with proper jurisdiction to compel arbitration under this policy and to enforce an arbitration award. A party opposing enforcement of an award may bring a separate action in any court with proper jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

*Requirements for Modification or Revocation*
This policy can be revoked only by a writing signed by both the Company's Chief Executive Officer and the associate, which specifically states an intent to revoke this policy.

This policy replaces any prior arbitration policies of the Company.

**Construction**
If any provision of this Policy is determined to be void or otherwise unenforceable, in whole or in part, such determination shall not affect the validity of the remainder of the Agreement. All other provisions shall remain in full force and effect.

**Applicable Law**
Except as provided in this policy, the Federal Arbitration Act ("FAA") shall govern the interpretation and enforcement of, and all proceedings under this policy. To the extent that the FAA is inapplicable, or is held not to require arbitration of a particular claim, state law governing agreements to arbitrate shall apply.

**Not an Employment Agreement**
This policy does not, and shall not be interpreted to create, any contract of employment, express or implied. Nor does this policy in any way alter the "at-will" status of associates' employment.

**For Additional Information:**

Contact local Human Resources.

**EXHIBIT  D**

RECEIVED

APR 18 2007

SCL

1  NATHANIEL POTRATZ, ESQ., SBN 215734
   LAW OFFICES OF NATHANIEL POTRATZ
2  4790 Dewey Drive, Suite A
   Fair Oaks, California 95628
3  Telephone:    (916) 962-2780
   Facsimile:    (916) 962-2705
4
   Attorneys for Plaintiff
5

6

7              UNITED STATES DISTRICT COURT

8        EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO)

9
   Kathi Sherwood,                          )   Case No.:
10                                          )
              Plaintiff,                    )   COMPLAINT FOR DAMAGES FOR:
11                                          )
              v.                            )   1.    UNLAWFUL AGE
12                                          )         DISCRIMINATION (In
   Blue Cross; Wayne Dahlgren, in his official )      Violation of Fair Employment
13 and/or agency capacity, not in his individual )    and Housing Act, Cal. Gov. Code
   capacity; Does 1 through 10, inclusive,  )         § 12900 et seq.)
14                                          )   2.    UNLAWFUL AGE
              Defendants.                   )         DISCRIMINATION (In
15                                          )         Violation of 29 USCA §§ 621-
                                            )         634, "ADEA")
16                                              3.    NEGLIGENCE (Common law
                                                      and Civil Code section 1714)
17                                              4.    NEGLIGENCE PER SE
                                                5.    AGE DISCRIMINATION IN
18                                                    VIOLATION OF
                                                      FUNDAMENTAL PUBLIC
19                                                    POLICY (TAMENY CLAIM)

20                                              DEMAND FOR JURY TRIAL

21

22

23

24

25

26

27

28

                              1
                    COMPLAINT FOR DAMAGES

EXHIBIT D

1  COMES NOW Kathi Sherwood ("Plaintiff"), who sets forth the following allegations:

2  ## JURISDICTION AND VENUE

3      1.    This Court has personal jurisdiction over the defendants because they are residents
4  of and doing business in the State of California and/or there is a question of federal law.

5      2.    Venue is proper in this court because there is a question of federal law and the
6  acts and omissions giving rise to the claims asserted herein occurred within this judicial district.

7      3.    Plaintiff has complied with administrative requirements prior to initiating this
8  lawsuit for claims made under FEHA. Accordingly, a "Right to Sue" letter has been issued by
9  the California Department of Fair Employment and Housing. As to the ADEA, filing with the
10  state agency (DFEH) is deemed filing with the EEOC. Where the state agency has a
11  "work-sharing agreement" with the EEOC (by which each agency designates the other as its
12  agent for purposes of receiving and drafting charges), timely filing with the state agency satisfies
13  the requirement of filing charges with the EEOC. [See e.g. 29 CFR § 1626.10(c); Sanchez v.
14  Pacific Powder Co. (9th Cir. 1998) 147 F.3d 1097, 1099].

15  ## PARTIES

16      4.    At all times herein mentioned, Plaintiff Kathi Sherwood was a resident of the
17  County of Placer, State of California, and was employed by Defendants.

18      5.    At all times herein mentioned, Defendant Wayne Dahlgren was acting as
19  Director/agent for Blue Cross.

20      6.    At all times herein mentioned, Defendant Blue Cross was doing business in the
21  State of California.

22      7.    At all times herein mentioned, Defendant Blue Cross was regularly employing 20
23  or more persons.

24      8.    The true names and capacities, whether corporate, associate, individual or
25  otherwise of Defendants, Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore
26  sues said Defendants by such fictitious names pursuant to California Code of Civil Procedure
27  §474. Each of the Defendants designated herein as a Doe is negligently or otherwise legally
28  responsible in some manner for the events and happenings herein referred to and caused injuries

1

1 and damages proximately thereby to the Plaintiff, as herein alleged. Plaintiff will ask leave of
2 Court to amend this Complaint to show their true names and capacities when the same have been
3 ascertained.

4     9.     At all times herein mentioned, Defendants, and each of them, were the agents,
5 representatives, employees, supervisors, successors and/or assigns, each of the other and at all
6 times pertinent hereto were acting within the course and scope of their authority as such agents,
7 representatives, employees, supervisors, successors and/or assigns. Each of the acts alleged were
8 ratified, authorized, approved, aided and abetted and/or acquiesced in by the other Defendants.

9 **FACTS COMMON TO ALL CAUSES OF ACTION**

10     10.     I, Kathi Sherwood was a 25 year employee for Blue Cross.

11     11.     I, Kathi Sherwood displayed excellent work ethic and performed excellently in her
12 career with Blue Cross, however her career was dead-ended by age discrimination.

13     12.     Wayne Dahlgren was working for Blue Cross as a supervisor during all the events
14 alleged herein.

15     13.     Some time before August in 2005, I spoke with the Blue Cross H.R. manager
16 Marilyn Hines because I needed a career path to go into Account Management, I wanted to
17 advance in my career with Blue Cross. She explained to me that I need to apply for Sr. Client
18 Service Rep when an opening comes up. That the position always is promoted into an Account
19 Manager position. She had me speak with one of the lead people in Sales (Lorie Hauser). Lorie
20 also advised me to apply for Sr. Client Service Rep because this is a grooming position for
21 Account Manager.

22     14.     In August 2005, I applied for Sr. Client Service Rep and was promoted. My first
23 few weeks in the unit I was speaking with a young assistant to a sales rep (Ruby). She told me
24 that the other young assistant (Annie) told her that "the sales team is going to start hiring more
25 young people because they are more on the ball than older people". I was shocked and offended.
26 Also she told me that Annie makes comments against another sales assistant who is in her sixties,
27 making fun of her, saying "she is such an old fart, I bet she has Alzheimer's", and ageist
28 comments like that. I thought that was very mean and offensive, especially since I was an older

2

1  person myself, and I was deeply concerned at the ageist culture within our Blue Cross unit. I
2  tried hard to put it out of my mind but it kept coming up in different ways, different comments,
3  different treatment.

4        15.     I went to training in Woodland Hills in February. The training was a week. I
5  went with a Sales Rep (Monique 39 yrs old). She kept making remarks about "the older sales
6  assistant needs to be retired because she has Alzheimer's" and "she is so old, I'm sure she has
7  Alzheimer's". I could not believe it. Employees were so open to discriminate in this department.

8        16.     As a Sr. Client Service Rep I support three Account Managers. I spoke with
9  brokers and our clients (large employer groups) and individual customers all day handling
10 eligibility, claims, benefits, Medicare, coordination of coverage, new benefits laws, groups
11 premiums issues and more. Also this position is expected to handle Health Faires. When an
12 Account Manager is not answering her phone or not in the office they would call me. After a
13 short time our clients and brokers would call me directly. 75% of my job was being an Account
14 Manager, which is why this position always moves into an Account Manager position.

15       17.     In March 2006, one of our Sr. Account Managers gave notice. On March 22,
16 2006 I applied for the opening.

17       18.     The requirements for Account Manager have always been experience in the
18 Operations side of Blue Cross. This means experience in the Customer Service/Claims side of
19 Blue Cross. Also you have to meet company guidelines regarding absenteeism. (If you call in
20 unscheduled 6 or more times within a 12 month period, you are not eligible for promotion.)

21       19.     The director Wayne Dahlgren (new employee-2 months) conducted interviews for
22 two weeks. I was surprised to hear that he allowed an interview with Ruby who was the assistant
23 to a sales rep. She did not meet the basic eligibility and qualifications as far as attendance or
24 operations experience. I went to H.R. and asked why the director would be interviewing Ruby.
25 She said "he is probably just being nice". He had called her in his office a couple times after her
26 interview and she came out acting as if she had the job, telling her friend that she was so excited.
27 This was before my interview.

28       20.     During my interview he asked me only if travel is a problem, I advised no and we

3

COMPLAINT FOR DAMAGES

1 | spoke about how much the position pays. It was really not a full and fair interview.

2 |     21.    On 4-12-06 he called me into his office. He said "you are not going to like what I

3 | have to say. You are an exceptional employee, but I have chosen Ruby." I was so shocked, in

4 | total disbelief. I said why did you do that? She has no experience in resolving technical

5 | problems, nor does she understand the claims issues, benefits issues or company policy. She

6 | does not even know how to look up the answers. What is she going to say because these

7 | questions come in all day to the Account Managers. Whereas I have years of experience.

8 | He said Ruby will have plenty of help. I then said why would you hire someone who needs help

9 | when I do this all day long and I would not need assistance. I already do the job 75% of my days.

10 | He said well she has worked with brokers before. He was very nervous and started twitching

11 | because he knew it was age discrimination and I was calling him on it. I responded, I work with

12 | brokers all day long, besides my position is always promoted to Account Manager.

13 | He said "well I can *see* Ruby doing the enrollment meetings." (His tone was highly suggestive

14 | that because she was a younger woman that's why he could see her conducting the meetings).

15 | I said what do you mean "*see* her doing the enrollment meetings?" Have you ever seen her do a

16 | presentation or enrollment meeting?

17 | He said no.

18 | I said I don't understand.

19 | He said again I just can *see* Ruby doing the open enrollment meetings (which is 4% of the job).

20 | I said well she is 24 years old and inexperienced. I have a niece that is 19 yrs old, very pretty,

21 | really no work experience, why don't I tell her to come in and you can give her a job.

22 | He said I don't like where this conversation is going.

23 | I said imagine how I feel. This is really a slap in the face to me. I got up to leave.

24 | He seemed desperate and said wait, I may have another job for you somewhere down the road.

25 | I said give it to Ruby and I walked away.

26 |     22.    It was 2:30, I was really upset and told my supervisor Marilyn Robitalle that I was

27 | feeling ill and went home. The next day I called in sick. I wanted the Account Managers to

28 | know that Wayne said they all said negative things about me. I sent them an email from home to

1 | tell them and that I would not be in.

2 |     23.    On Friday 4-14-06 I went to the doctor and arrived at work at 11 am. I knew that
3 | my management would try something because I made reference to age discrimination. The
4 | doctor wrote me a note for being out. Also he filled out a FMLA form.

5 |     24.    My supervisor was waiting for me with a written warning for allegedly having a
6 | bad attitude, calling in sick and creating a negative environment by sending the email advising
7 | what the director had told me. I told her that I am not going to sign it because it was lies. She
8 | said I can fire you on the spot. I said do what you want, otherwise I am going to my desk and
9 | work, and I do not appreciate being threatened or harassed. I went to my desk and worked.

10 |     25.    In all my 25 years as a hard working and loyal employee of Blue Cross, I have
11 | never been written up. Almost every time I am promoted and leave a unit, the particular
12 | supervisor always says I am always invited and welcomed back if I want.

13 |     26.    I remained professional and continued to do my job. My friends would come by
14 | my desk and ask if I am ready for the meeting. I did not get the emails regarding the meetings. I
15 | strongly believe that I was left out intentionally, I was being singled out as the black sheep. I was
16 | left off of several emails regarding staff functions. Even a cake celebration for the team. I was
17 | completely ignored and ostracized. It became a hostile and oppressive work atmosphere.

18 |     27.    Two weeks later I gave notice by written email to the director, V.P., my
19 | supervisor and H.R. I said I will stay on 4 weeks more and hopefully train someone else.

20 |     28.    I filed a complaint with the state department for age discrimination and
21 | harassment. The H.R. manager (Marilyn Hines) called me in because she heard from the legal
22 | department. We spoke about what had happened and she said, I don't blame you, I would not
23 | want to work for him either.

24 |     29.    After 3 weeks, the H.R. manager came to me and asked me if I would like to leave
25 | early and they would pay me through the week. This was 5/30/06. I cleaned out my desk and
26 | left. After 25 years, to be treated like that was a huge slap in the face and was very hard on me.

27 |     30.    Most of my coworkers in the unit said they were very impressed with my
28 | professionalism during something that was so unfair, so discriminatory, so wrong.

1  Reasons that age discrimination was obvious:

2  • Wayne dropped the guidelines of past operations experience for Ruby (after she spoke
3  with him one-on-one where she expressed that she did not see why she had to have that
4  experience to apply for account manager). So when he posted the position for Account
5  Manager, he dropped the job experience description that has always been there for many
6  years.

7  • Ruby was with Blue Cross just 1 year.

8  • Wayne never explained to me Ruby's skills or experience or what she was bringing to the
9  position of Account Manager, all he said was that "I could *see* her doing the enrollment
10  meetings."

11  • Wayne dropped the attendance guidelines for Ruby. She was always calling in sick, a lot
12  more than 6 times. It was more like 15 or more.

13  • Ruby did not have the expertise or experience after we sign a group. She was the
14  assistant to the sales rep. She helped with missing information on applications, helped
15  with quotes. She had nowhere near the experience I had, although I had the disadvantage
16  of being more than twice her age (51 years old).

17  • During the weeks of the interview process Ruby had a complaint filed against her by one
18  of the team members for how she treated another employee. It went to H.R. where a
19  hearing was held and she was written up in her personnel file.

20  • During the weeks of the interview process Ruby walked into a staff meeting 15 minutes
21  late twice. Her reason mentioned to the entire group was that she was at Starbucks.

22  • During the weeks of the interview process, after Wayne had interviewed her, she was
23  overheard telling her friend Annie, that she was so excited and could not wait to be AM.
24  (before I even had my interview).

25  • (Before my interview), Wayne called Ruby back into his office (after her 1ˢᵗ interview)
26  and asked her if her absenteeism was going to be a problem. Again, she came out of that
27  meeting very excited, talking like she had the position already.

28  • I went to my supervisor and asked why Ruby was talking like she had the job already

6

1    when I had not even been interviewed yet.

2    • Ruby told me that she received bad marks on her yearly review for attendance.

3    • The person that was Sr. Client Service rep prior to me was 36 yrs old. She was just

4      moved to Account Manager without any interview process.

5    • Everyone that was a Sr. Client Service rep prior to me always became an account

6      manager, until me.

7    • Ruby was young and inexperienced and had not developed a strong work ethic, she

8      missed work a lot, was late, was a whiner, and acted immature.

9

10   • I was already doing Account Manager functions 75% of the time.

11   • My position was well known as the grooming position for Account Manager

12   • I received many appreciation emails and letters or cards from our clients

13   • During the weeks of interview process, I received an award for representing the face of

14     Blue Cross

15   • I had a good yearly evaluation with high marks on attendance and work quality

16   • When I asked Wayne why he hired Ruby over me he did not have a good answer other

17     than he could see her doing open enrollment meetings. He spoke nothing of her work

18     experience, qualifications or skills. He even admitted that she would need a lot of help.

19   • My resume of many different departments at Blue Cross of 25 years of experience

20   • Blue Cross' policy that the most qualified person is chosen for promotion was violated

21     for Wayne Dahlgren's old school policy that the youngest pretty girl is promoted

22

23                          **FIRST CAUSE OF ACTION**

24                     **UNLAWFUL AGE DISCRIMINATION**

25   **(In Violation of Fair Employment and Housing Act, Cal. Gov. Code § 12900 *et seq.*)**

26                     (By Plaintiff Against All Defendants)

27        31.    Plaintiff hereby incorporates paragraphs 1 through 30 of the Complaint, as if fully

28   set forth herein.

7

1    32.    Plaintiff is protected under the Fair Employment and Housing Act from

2  discrimination due to age (over 40)

3    33.    Defendants wrongfully discriminated (and/or retaliated) against Plaintiff because

4  of Plaintiff's age.

5    34.    Plaintiff's age was a substantial factor in Defendants' decision to unlawfully

6  discriminate against Plaintiff.

7    35.    Defendants' conduct as alleged in this complaint constitutes an unlawful

8  employment practice in violation of Cal. Gov. Code §12900 *et seq.*

9    36.    As a direct, foreseeable, and proximate result of Defendants' unlawful acts,

10  Plaintiff has suffered and continue to suffer substantial losses in earnings and job benefits, and

11  has suffered and continues to suffer mental and emotional distress, all to Plaintiff's damage in an

12  amount within the jurisdictional limits of this Court, to be established according to proof at trial.

13    37.    Defendants committed the acts described in this complaint oppressively or with

14  conscious disregard of Plaintiff's rights and welfare, entitling Plaintiff to an award of punitive

15  damages against Defendants in an amount appropriate to punish and make an example of

16  Defendants.

17    WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set

18  forth hereinbelow.

19                    **SECOND CAUSE OF ACTION**

20                    **UNLAWFUL AGE DISCRIMINATION**

21                  (In Violation of 29 USCA §§ 621-634, "ADEA")

22                    (By Plaintiff Against All Defendants)

23    38.    Plaintiff hereby incorporates paragraphs 1 through 37 of the Complaint, as if fully

24  set forth herein.

25    39.    Plaintiff is protected under the ADEA from discrimination due to age (over 40)

26    40.    Defendants wrongfully discriminated (and/or retaliated) against Plaintiff because

27  of Plaintiff's age.

28    41.    Plaintiff's age was a substantial factor in Defendants' decision to unlawfully

8

1   discriminate against Plaintiff.

2       42.     Defendants' conduct as alleged in this complaint constitutes an unlawful

3   employment practice in violation of 29 USCA §§ 621-634.

4       43.     As a direct, foreseeable, and proximate result of Defendants' unlawful acts,

5   Plaintiff has suffered and continue to suffer substantial losses in earnings and job benefits, all to

6   Plaintiff's damage in an amount within the jurisdictional limits of this Court, to be established

7   according to proof at trial.

8       WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set

9   forth hereinbelow.

10                          **THIRD CAUSE OF ACTION**

11                                **NEGLIGENCE**

12                  **(Common law and Civil Code section 1714)**

13                       (By Plaintiff Against All Defendants)

14      44.     The allegations set forth in paragraphs 1 through 43 are incorporated herein by

15  reference.

16      45.     Defendants had a duty to exercise reasonable care and prudence to provide a safe,

17  healthful, non-hostile, non-discriminatory, non-retaliatory working environment, which duty they

18  breached. Defendants also had a duty to exercise reasonable care and prudence to take all

19  reasonable steps to prevent discrimination or retaliation from occurring, which duty they

20  breached.

21      46.     Defendants' breach of duty was the actual and proximate cause of damages

22  suffered by Plaintiff.

23                          **FOURTH CAUSE OF ACTION**

24                            **NEGLIGENCE PER SE**

25                       (By Plaintiff Against All Defendants)

26      47.     The allegations set forth in paragraphs 1 through 46 are incorporated herein by

27  reference.

28      48.     Defendants' negligence as stated above was negligence per se because in violation

                                        9

1   of a statute or statutes designed to protect against the kind of harm which Plaintiff suffered.

2   Specifically, Gov Code section 12900 et seq. and 29 USCA §§ 621-634 was legislated with the

3   intent of preventing and protecting California's workers from age discrimination and retaliation.

4        49.   Defendants' negligence was the proximate cause of harm suffered by Plaintiff.

5        50.   Plaintiff has been generally damaged in an amount within the jurisdictional limits

6   of this Court according to proof at trial.

7        WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set

8   forth below.

9                          **FIFTH CAUSE OF ACTION**

10       (By Plaintiff for Violation of Fundamental Public Policy against all Defendants)

11       51.   Plaintiff incorporates herein by this reference each and every allegation contained

12   in paragraphs 1 through 50, inclusive, as if fully set forth at this point.

13       52.   Defendants age discriminated against Plaintiff in violation of public policy

14   (Tameny claim). It is a violation of fundamental public policy to age discriminate and/or

15   retaliate against an employee.

16       53.   As a direct and proximate result of such discrimination, Plaintiff has suffered

17   emotional and mental distress and economic damages (losses of income and benefits), all such

18   damage according to proof at trial.

19       WHEREFORE, Plaintiff prays judgment against Defendants as follows:

20       1.    For all general money damages and compensatory damages, past, present and

21             future, plus interest, in an amount within the jurisdictional limits of this court

22             according to proof;

23       2.    For special damages, if any, plus interest, according to proof;

24       3.    For loss of earnings and benefits, past, present and future, plus interest, according

25             to proof;

26       4.    For punitive/exemplary damages, if any, according to proof;

27       5.    For reasonable attorney fees and costs and expert witness fees pursuant to Cal.

28             Gov. Code §12965(b) and 29 USCA §§ 621-634;

                                    10

                          COMPLAINT FOR DAMAGES

1  6.  For incidental and/or consequential damages, if any, according to proof;

2  7.  For prejudgment and postjudgment interest;

3  8.  For reinstatement and backpay and frontpay and all other remedies provided by

4     Cal. Gov. Code §12940 et seq. and 29 USCA §§ 621-634; and

5  9.  For such other and further relief as the Court deems just and equitable.

6                    **DEMAND FOR JURY TRIAL**

7  Plaintiff hereby demands a trial by jury of her peers to the fullest extent permitted by law.

8  DATED: March 30, 2007                    LAW OFFICES OF NATHANIEL POTRATZ

9

10                                 By:___/s/ NATHANIEL POTRATZ___
                                       NATHANIEL POTRATZ, Esq.
11                                     Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                 11
                          COMPLAINT FOR DAMAGES