UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KATHI SHERWOOD,

        Plaintiff,

   v.

BLUE CROSS; WAYNE DAHLGREN,
in his official and/or agency
capacity, not in his individual
capacity,

        Defendants.

NO. CIV. S-07-633 LKK/DAD

O R D E R

/

Plaintiff has brought this action against her former employer, alleging age discrimination, negligence, and violation of public policy. Pending before the court is defendants' petition to compel arbitration pursuant to the Federal Arbitration Act and to stay the present proceedings. For the reasons explained below, the court finds that, as written, the arbitration agreement does not to apply to plaintiff and that even if it did, it would be unenforceable for unconscionability. Accordingly, the court denies defendant's petition.

1

**I. Background**

Plaintiff Kathi Sherwood was an employee of defendant Blue Cross of California for 25 years. Compl. ¶ 10, 30. In 2006, plaintiff unsuccessfully applied for the position of account manager. Id. ¶ 17, 21. The individual chosen to fill the position was a younger, 24 year old woman. Id. ¶ 21. At the time of the incident, plaintiff was 51 years old. Id. ¶ 30. Two weeks later, plaintiff provided written notice that she would be leaving Blue Cross in four weeks and hopefully train a replacement during that time period. Id. ¶ 27. On May 30, 2006, the third week after she provided notice, the Human Resources manager asked if she would like to leave early and that they would pay her through the week. Id. ¶ 29.

She subsequently filed the present lawsuit, which alleges five causes of action against defendants Blue Cross of California and Wayne Dahlgren, one of her former supervisors. Her first two causes of action are for unlawful age discrimination: one under California's Fair Employment and Housing Act, Cal. Gov. Code §§ 12900 et seq., and the second under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634. Her third and fourth causes of action are for negligence and negligence per se. Finally, her fifth cause of action is for "Violation of Fundamental Public Policy."[1]

---

[1] The complaint parenthetically refers to this cause of action as a "Tameny claim," a reference to the California Supreme Court decision, Tameny v. Atlantic Richfield Co., 27 Cal.3d 167 (1980), authorizing such claims.

Defendants maintain that plaintiff's claims must be submitted to arbitration. They base this assertion on three documents (collectively, the "arbitration agreement"). First, on February 15, 2001, plaintiff signed an application for employment.[2] Decl. of Diana Craig, Ex. A. At the bottom of that application, the following appeared: "I understand that as an employee of the Company, I will be subject to the the [sic] Company Arbitration policy. Thus, in the event of my involuntary termination, I agree to submit any dispute related to that termination to final and binding arbitration, as more fully described in the Human Resources Arbitration policy." Id.

Second, a letter dated February 23, 2001 confirming plaintiff's offer of employment contained the following paragraph: "[T]he . . . position [] is covered under the bargaining unit agreement with Blue Cross of California and Office & Professional Employees International Union, Local 29. As an employee of Blue Cross of California, you will be subject to the Company's binding arbitration procedures, as more fully described in Human Resources Policy #613, Arbitration, and the enclosed brochure." Craig Decl., Ex. B. The letter was signed by plaintiff on March 5, 2001. When plaintiff was promoted to sales in August 2005, she ceased to be part of the union.

Third, the company's arbitration policy (Human Resources

---

[2] Presumably, given that plaintiff alleges that she was an employee at Blue Cross of California for 25 years, she was already working at Blue Cross at this time but was simply applying for a new position within Blue Cross.

3

1 Policy #613) was attached to the offer letter. That policy
2 provides that, "By entering into the employment relationship, the
3 Company and its associates subject to the policy consent to the
4 resolution by binding arbitration of all claims arising out of or
5 related to the termination of that relationship (and for associates
6 commencing employment in 2001 or later, all legal disputes)."
7 Craig Decl., Ex. C.

8 Plaintiff maintains that at some point during her employment
9 she "was told to just quickly sign off on a bunch of forms." Decl.
10 of Kathi Sherwood ¶ 3. She allegedly "did not get the chance to
11 read, much less understand, the mandatory binding arbitration
12 clauses and legalese in the thick papers I was given and told I
13 must sign." Id. She further maintains that "[she] signed the
14 forms because [she] was told that [she] must sign or that [she]
15 simply could not be hired with Blue Cross" and that "[i]t was
16 presented on a 'take ir or leave it' basis." Id. ¶¶ 3, 4.
17 Defendants "concede that plaintiff's employment was conditioned on
18 agreeing to arbitrate, which renders the arbitration agreement
19 procedurally unconscionable."[3] Defs.' Reply at 3.

## II. Standard

21 The Federal Arbitration Act permits a party aggrieved by the
22 failure to arbitrate to petition a United States district court for
23 an order compelling arbitration. 9 U.S.C. § 4. The district court

---

[3] Nevertheless, as explained below, defendants maintain that the agreement remains enforceable because the agreement is not substantively unconscionable.

4

must otherwise have jurisdiction over the subject matter of the suit under Title 28 but for the arbitration agreement. If the court is satisfied that "the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court must order the parties to proceed to arbitration. Id.

### III. Analysis

Plaintiff argues that (1) the arbitration agreement only applies to employees who have been involuntarily terminated, and that (2) the arbitration agreement is unconscionable and therefore unenforceable. The court finds that both of these reasons constitute valid and independent grounds for denying the petition to compel arbitration.

**A. Scope of Arbitration Agreement**

The initial task before the court is to determine the scope of the arbitration agreement. The company's arbitration policy states that it applies to "all claims arising out of or related to the termination of that relationship (and for associates commencing employment in 2001 or later, all legal disputes)." Craig Decl., Ex. C. Here, plaintiff alleges that she was an employee of Blue Cross for 25 years. Compl. ¶ 10. Although she may have moved internally within the company over that period of time, it would be unreasonable to read the phrase, "associates commencing employment in 2001 or later," as applying to her.[4] A reasonable

---

[4] For example, the February 2001 letter referencing the arbitration policy extended an offer of employment to plaintiff for the position of a Customer Service Representative. Craig Decl., Ex. B ("On behalf of WellPoint Health Networks, Inc., I am pleased

5

employee in plaintiff's situation -- which is to say, an employee who had been with Blue Cross of California for two and a half decades -- would not read that phrase as encompassing her.

Rather, plaintiff was subject to the portion of the arbitration policy specifying its application to "all claims arising out of or related to the termination of that relationship." Craig Decl., Ex. C. Here, plaintiff argues that the policy applies only when an employee is "terminated" or fired, rather than when an employee resigns. Arguably, the policy is employing the word "termination" in the literal sense, by which the policy would apply to any claims related to the cessation of the employer-employee relationship, rather than only claims related to the termination of the employee by the employer. After all, the phrase employed is "termination of th[e] relationship," not "termination of the employee."

Nevertheless, in the present case, that interpretation is squarely at odds with the language contained in the employment application form. That form provides: "I understand that as an employee of the Company, I will be subject to the Company Arbitration policy. Thus, in the event of my involuntary termination, I agree to submit . . . to . . . arbitration." Craig Decl., Ex. A. In light of how "termination" is used here, it would

---

to confirm the following offer of employment as a Customer Service Representative, for Blue Cross of California."). Although neither party has explained the relationship between WellPoint and Blue Cross of California, presumably WellPoint is part of Blue Cross of California, given that the latter is the named defendant.

6

be unreasonable to conclude that the same word employed elsewhere, and in connection with the same subject matter (arbitration), changed and expanded to include voluntary resignations. Despite the general directive to resolve doubts concerning the scope of arbitrable issues in favor of arbitration, <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983), interpreting "termination" to include voluntary resignations would require the court to rewrite the terms of the contract and thereby upset the reasonable expectations of the employee.

Perhaps recognizing as much, defendants do not argue for this interpretation of the contract. Rather, they argue that they in fact terminated plaintiff from her position, at least based on the allegations made and causes of actions asserted. Specifically, defendants claim that plaintiff "has alleged she was constructively terminated, and that she was wrongfully terminated in violation of public policy." Defs.' Reply at 8.

A careful reading of plaintiff's complaint does not bear out this conclusion. The crux of plaintiff's allegations with regard to discrimination is a failure to promote claim. Although it appears that she resigned after what she felt was discriminatory conduct, she does not allege that the discontinuation of her employment was an adverse employment action, or that it otherwise constitutes cognizable legal injury. Similarly, she has not claimed that she was wrongfully discharged in violation of public policy; rather, she claims that the defendants' failure to promote her due to discriminatory reasons also violates California public

7

policy, thereby opening up the possibility of tort damages.

In sum, the court interprets the arbitration policy, fairly construed in light of the language employed by the employment application, as applying only to claims arising out of or related to the termination of an employee by the employer.[5] Here, because plaintiff has not alleged that she was terminated or constructively discharged by her employer, the court finds the arbitration agreement inapplicable.[6]

**B. Unconscionability**

The Federal Arbitration Act provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable" except when grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).

---

[5] How, and whether, this construction bears upon the scope of recovery is not before the court and the court will not speculate upon that question.

[6] The court declines to find the arbitration inapplicable for the alternate grounds urged by plaintiff: that the arbitration policy only applied so long as plaintiff was a member of the union and lost effect once when was promoted to a sales position in August 2005. Although the offer letter noted that her position was covered by the union's collective bargaining agreement, and stated in the next sentence that she was subject to the company's arbitration policy, the two topics are unrelated. If anything, it appears that this juxtaposition was to first highlight plaintiff's rights under the bargaining agreement but then remind plaintiff that these rights (and presumably certain others as well) were subject to vindication through arbitration.

Under California law, an arbitration agreement is unenforceable if it is both procedurally and substantively unconscionable. Fitz v. NCR Corp., 118 Cal. App. 4th 702, 714 (2004). "However, both elements need not be present in the same degree. Generally, a sliding scale approach is taken; that is, 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" Id.; Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).

**1. Procedural Unconscionability**

Procedural unconscionability exists when, for example, the contract is adhesive and offered on a take-it-or-leave-it basis, is a prerequisite for employment, and may not be modified by job applicants. Ingle, 328 F.3d at 1171. "When a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, 'oppression and, therefore, procedural unconscionability, are present.'" Id. at 1172. As noted above, all these elements of procedural unconscionability are present. Plaintiff also indicates that she "was told to just quickly sign off on a bunch of forms" and that the arbitration policy was "one of dozens of pages which I had been handed." Sherwood Decl. ¶ 3. Accordingly, defendants concede that the element of procedural unconscionability is present.

////

1  **2. Substantive Unconscionability**

2  Substantive unconsciionability concerns the terms of the
3  agreement and whether those terms are one-sided. Circuit City v.
4  Mantor, 335 F.3d 1101, 1107 (9th Cir. 2003). Because the court
5  applies a sliding scale with respect to the requisite degree of
6  procedural and substantive unconscionability, and the degree of
7  procedural unconscionability in this case is significant,
8  plaintiff's burden of proving substantive unconscionability is not
9  onerous.

10  Here, there is the minimal quantum of substantive
11  unconscionability required to find the arbitration agreement
12  unenforceable. First, although parties may agree to "less than the
13  full panoply of discovery" to which they are normally entitled,
14  Armendariz, 24 Cal. 4th at 105, there is nevertheless a minimum
15  threshold of discovery that must be present. Here, the arbitration
16  policy provides that each party has the right to take the
17  deposition of only one individual. Craig Decl., Ex. C. In Fitz,
18  the court found that an arbitration agreement that limited
19  depositions to two individuals ran afoul of "minimum standards of
20  fairness in arbitration so that employees subject to mandatory
21  arbitration agreements can vindicate their public rights in an
22  arbitral forum." 118 Cal. App. 4th at 719; see also Ferguson v.
23  Countrywide Credit Indus., Inc., 298 F.3d 778, 786 (9th Cir. 2002)
24  (arbitration agreement unconscionable where discovery provision
25  limited depositions to four corporate representative). Here, the
26  restriction on depositions is twice as severe as that in Fitz.

1    Although the arbitration policy provides that the parties may
2 make additional requests for discovery to the arbitrator, the
3 agreement directs that "[i]n evaluating such requests, the
4 Arbitrator shall take into account the parties' mutual desire to
5 have a fast, cost-effective dispute resolution mechanism." Craig
6 Decl., Ex. C.  A similar clause permitting additional depositions
7 in the discretion of the arbitrator in Fitz did not save the
8 agreement from unenforceability.  118 Cal. App. 4th at 717
9 ("Granting the arbitrator discretion to determine whether
10 additional discovery is necessary . . . is an inadequate safety
11 valve.").

12   Furthermore, although defendants might argue that the
13 limitation on discovery is mutual, this ignores the practical
14 reality of employment disputes. Oftentimes, "the employer already
15 has in its possession many of the documents relevant to an
16 employment discrimination case as well as having in its employ many
17 of the relevant witnesses." Mercuro v. Superior Court, 96 Cal.
18 App. 4th 167, 183 (2002).  Accordingly, although limitations on
19 discovery may ostensibly apply to both parties, they work in effect
20 to disadvantage only the employee.

21   Second, the arbitration policy states that if the associate
22 initiates the claim, the employee must contribute "an amount not
23 to exceed two hundred fifty dollars."  Craig Decl., Ex. C.  In
24 2003, the Ninth Circuit found that a mandatory filing fee of $75
25 without any provision for waiver in cases of indigence contributed
26 to a finding of substantive unconscionability.  Ingle, 328 F.3d at

11

1177. Here, the language employed in the agreement is somewhat ambiguous, given that it states that the employee must contribute an amount but that the amount may not greater be greater than $250. Fairly read, however, it simply appears to impose a $250 filing fee.

While the amount is not particularly objectionable, as in Ingle there is no provision for waiver in cases of indigence. Ordinarily, while this factor would not be entitled to much weight, given the particular circumstances of this case -- where defendants have conceded the element of procedural unconscionability and where there are other examples of substantive unconscionability -- it is at least a relevant consideration.

While the court could attempt to sever the substantively unconscionable provisions of the arbitration agreement in order to save the remaining provisions, Cal. Civ. Code § 1670.5 (permitting severance); Craig Decl., Ex. C (severance provision), where defendants have openly admitted that the contract was procedurally unconscionable, this result would not be in the interests of justice. Armendariz, 24 Cal. 4th at 124 ("The overarching inquiry is whether the interests of justice . . . would be furthered by severance.") (internal quotation marks omitted). "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." Id. Here, the undisputed element of procedural unconscionability permeates the entire agreement, rendering the entire agreement unenforceable.

////

## IV. Conclusion

For the two independent reasons set forth above, the court DENIES defendant's petition to compel arbitration.

IT IS SO ORDERED.

DATED: September 13, 2007.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT